## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

BENJAMIN S. REYNOLDS,

                Plaintiff,

v.                                      CIVIL ACTION NO.  5:10-cv-00443

AMERICAN RED CROSS NATIONAL
HEADQUARTERS, et al.,

                Defendants.

### MEMORANDUM OPINION AND ORDER

The Court has reviewed Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment on Amended Complaint ("Defs.' Mot.") (Document No. 25); Plaintiff Benjamin Reynolds' Response to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment and Plaintiff's Motion for Rule 11 Sanctions Against the Defendants ("Pl.'s Oppn.") (Document No. 24)  and the Motion of Plaintiff Benjamin Reynolds to Withdraw Request for Sanctions against the Defendants ("Pl.'s Mot. to Withdraw") (Document No. 45.)

Upon consideration of the instant motions, the memoranda submitted in support thereof and in opposition thereto (Documents No. 24, 26 - 27), and the attached exhibits, the Court grants in part and denies in part Defendants' Motion and grants Plaintiff's Motion to Withdraw Request for Sanctions, for the reasons that follows.

### I.  PROCEDURAL HISTORY AND BACKGROUND

On April 2, 2010, Plaintiff, proceeding *pro se*, filed a complaint against the American Red Cross National Headquarters ("National Red Cross"), American Red Cross Mid-Atlantic Service Area ("Mid-Atlantic RC"), American Red Cross Greenbrier Valley Chapter ("the Chapter"), Nikki McBain, Chapter Solutions Manager, and Walter M. Lockhart, Chapter Executive Director.[1]  In his handwritten Complaint form, Plaintiff alleges that he was injured while working for the Chapter, but he was forced to continue to work even though he was injured and on medical leave. (Compl. (Documents No. 2, 5.) at 4.)  He also alleges that he was told that if he filed a workers' compensation claim he would lose his job. (*Id*.) As a result, he did not seek workers' compensation benefits. Plaintiff asserts that both Defendants Lockhart and McBain had knowledge of his injury, but "failed to protect [him] as a worker" or provide the "protection . . . as requested by the . . . doctor[.]" (*Id*. at 4-5.)  Likewise, Plaintiff asserts that Defendants National Red Cross and Mid-Atlantic RC did not afford him any protection and that "harassment and other problems . . . followed." (*Id*. at 5.)  Thereafter, on April 30, 2010, Plaintiff "added" several documents to his "case record" which were related to an Equal Employment Opportunity Commission ("EEOC") claim. (Document No. 6.)[2]

_____

[1]  On the same day, Plaintiff filed an application to proceed without prepayment of filing fees. (Documents No. 1, 4.)

[2]  The documents were characterized by the Clerk of Court as an addendum to Plaintiff's  Complaint. The relevant documents include:

(1) an August 21, 2009 Letter to Plaintiff from the U.S. Equal Employment Opportunity Commission, Pittsburgh Area Office, indicating its receipt of an inquiry in which Plaintiff alleged employment discrimination, pursuant to the American with Disabilities Act, and the agency's request for a signature.
(2) Charge of Discrimination EEOC form 5, dated September 11, 2009, in which Plaintiff alleged in relevant part: that he started working for the Chapter in June, 1999; he was injured on the job; a physician released him to work with lifting restrictions; requests for reasonable accommodations were denied; Lockhart told him he would be fired if he filed a

(continued...)

2

On May 13, 2010, Magistrate Judge R. Clarke VanDervort, reviewed Plaintiff's Application to proceed *informa pauperis*.[3]  In doing so, he construed Plaintiff's *pro se* Complaint liberally to find that Plaintiff alleged that the Defendants violated his rights under the Americans with Disabilities Act  and retaliated against him in violation of Title VII of the Civil Rights Act. (*See* Document No. 7.)

On August 2, 2010, Defendants filed their first motion to dismiss, or in the alternative, motion for summary judgment (Document No. 17), wherein they contend that Plaintiff's Complaint should be dismissed because it was barred by the West Virginia Workers' Compensation Act and that any claims pursuant to the ADA and Civil Rights statutes were barred by the statute of limitations.  On August 3, 2010, Magistrate Judge VanDervort ordered Plaintiff to file an opposition to Defendants' motion by September 3, 2010 (Document No. 19).  On August 4, 2010, Plaintiff obtained counsel (Document No. 20) and, on August 20, 2010, filed a motion for the voluntary dismissal of Defendants McBain and Mid-Atlantic RC.

Plaintiff, through counsel, also filed an Amended Complaint (Am. Compl. (Document No. 23.))  In his amended pleading, Plaintiff asserts a civil action of discrimination and retaliation as against Defendants National Red Cross, the Chapter and Lockhart, pursuant to the Americans with

---

[2](...continued)
workers' compensation claim, no other employer would hire him and that he was being watched by the Executive Board; he was terminated on January 30, 2007 for the stated reason of budgetary restrictions, but he thinks he was terminated because of his disability and in retaliation for seeking a reasonable accommodation;
(3) EEOC Dismissal and Notice of Rights, dated December 30, 2009, in which the EEOC informed Plaintiff that his file was being closed because the "Respondent[, American Red Cross, Greenbrier Valley Chapter] employed less than the required number of employees or is not otherwise covered by the statutes."  (*Id*. at 5.)

[3]    The instant matter was referred to the Magistrate Judge on April 4, 2010, pursuant to 28 U.S.C. § 636. (Document No. 3.)  Magistrate Judge VanDervort granted Plaintiff's application, but required Plaintiff to pay a partial filing fee of $100 before the issuance of any summons.  On June 17, 2010, the Clerk of Court issued the summonses. (Document No. 9.)

Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. ("ADA") and the Civil Rights Acts of 1964 and 1991, 42 U.S.C. § 2000(e) *et seq*. ("Title VII"). Plaintiff expounds on the allegations asserted in his initial pleading by setting forth the following. On or about June 1999, he began working as a volunteer CPR/First Aid Instructor for the Chapter, an agent of the National Red Cross. (Am. Compl. ¶¶ 4, 9.) On or about August 1, 2006, he was promoted to the full-time salaried position of Service Delivery Manager. (*Id*. ¶ 12.) On August 5, 2006, at the direction of Defendant Lockhart, he assisted others in the loading and unloading of a baby grand piano. (*Id*. ¶¶ 13-14.) As he moved the piano, he suffered a severe pain in both his neck and upper back. (*Id*. ¶ 14.) Although he told others present that he was unable to continue, Defendant Lockhart "ignored [his] plea" and required him to continue assisting in the piano delivery. (*Id*. ¶ 15.) A few days later, he sought relief at a local emergency room for the pain he experienced in his neck and upper back. He was referred to the Greenbrier Valley Medical Center ("GVMC"), where Dr. Boisverte diagnosed him as having a severe strain and sprain in is upper back and neck. (*Id*. ¶ 16.) He later was diagnosed by Dr. Kribs, of the Robert C. Byrd Clinic in Lewisburg, West Virginia, with severe neck and back injuries and ordered to stay off work until he could visit a physiatrist at the University of Virginia Medical Center ("UVAMC"), in Charlottesville, Virginia. (*Id*. ¶ 17.) Plaintiff advised Defendant Lockhart of Dr. Kribs' medical order, but Defendant Lockhart threatened that if he did not continue to work he would be terminated from his position. (*Id*. ¶ 18.) Plaintiff "pleaded with Defendant Lockhart" for a reasonable accommodation of a limitation on heavy lifting, but Defendant Lockhart told him that if he refused to work without restrictions, he would be terminated. (*Id*. ¶ 19.) Defendant Lockhart warned him that the Executive Board of the Chapter was watching his workplace and personal activities and insisted that he continue to work. (*Id*. ¶ 20.) However, a few days later,

4

Defendant Lockhart instructed Plaintiff to stay off from work until his appointment at the UVAMC. Plaintiff alleges that Defendant Lockhart's change of position occurred after he spoke with an attorney who informed him that requiring Plaintiff to continue working "would pose a liability to the Defendants." (*Id*. ¶ 21.)

Thereafter, on or about September 7, 2006, Defendant Lockhart insisted on accompanying Plaintiff to his appointment at the UVAMC where Plaintiff was examined by Dr. Mistery.  Dr. Mistery concurred with the previous diagnoses that Plaintiff "suffered from severe and acute afflictions to his neck and upper back[]" and referred Plaintiff to a pain management center. (*Id*. ¶ 23.) Dr. Mistery also ordered Plaintiff to undergo several tests, return for a follow-up visit and not to return to work.  (*Id*. ¶¶ 23-24.) Plaintiff advised Defendant Lockhart of the same.  Plaintiff alleges that Defendant Lockhart, on his own accord and without permission, approached the doctor, "slanderously" advised that Plaintiff "was being dishonest about his injury" and stated that Plaintiff would be terminated if he followed the "doctor's recommendation to stay off work and/or if [Plaintiff] filed for worker's compensation benefits." (*Id*. ¶ 25.)  Thereafter, Dr. Mistery released Plaintiff for work with the restriction that he could not lift any weight exceeding fifteen pounds.  (*Id*. ¶ 26.)   Plaintiff alleges that Defendant Lockhart was aware of the doctor's restriction, however, upon his return to work, Defendant Lockhart ignored the doctor's order and refused his request for a reasonable accommodation.  (*Id*. ¶ 27.) Plaintiff also alleges that Defendant Lockhart again threatened that he would be fired if he took time off from work, did not continue working without an accommodation, or applied for workers' compensation benefits. (*Id*. ¶ 28.)   He also allegedly threatened Plaintiff that he would not be able to find any other employment if he followed the doctor's orders.  (*Id*.)

Plaintiff alleges that he continued to work, despite suffering pain, because he feared reprisal and repercussions of pursuing his legal rights. (*Id*. ¶ 29.)  However, on or about January 28, 2007, Defendant Lockhart verbally informed him that he was terminated.  On January 30, 2007, he received a termination letter explaining that his termination was the result of "lackluster job performance" and budget restrictions.  (*Id*. ¶¶ 31-32.) Plaintiff alleges that he has never received any negative evaluations or reprimands related to his job performance and that soon after his termination, a female employee was hired at the same or near the same compensation level.  (*Id*. ¶ 32.)  Plaintiff observes that his termination occurred shortly after the six-month deadline to apply for workers' compensation benefits expired.  (*Id*. ¶ 34.)  He alleges that when he sought alternative employment in his community, Defendant Lockhart repeatedly "slandered" him with respect to "numerous falsehoods, including outrageous claims that [he] was caught stealing while employed [at the Chapter.]" (*Id*.)  As a result of the "slander and harassment" he "was forced to relocate" to North Carolina.  (*Id*. ¶ 35.)

After his termination, Plaintiff applied for workers' compensation benefits.  However, his claim was denied as untimely. He also filed a claim with the EEOC in 2007 for "disability discrimination and other unlawful acts."  However, on December 30, 2009, this claim was closed and he received a right to sue notification.[4]

As a result of these allegations, in his Amended Complaint, Plaintiff asserts that he continues to suffer from a physical impairment that substantially limits one or more of his major life activities.  To that end, Plaintiff asserts that Defendants (1) discriminated against him on the basis of his disability, (2) wrongfully discharged him in violation of the ADA,  (3) failed to provide a

---

[4]  (*See surpa* n.2.)

reasonable accommodation, (4) through Defendant Lockhart, made medical inquiries of an employee that are prohibited by the ADA, (5) created a hostile work environment and (6) unlawfully retaliated against him for seeking a reasonable accommodation. (*Id.* ¶¶ 46-78.)[5]

On September 3, 2010, Plaintiff filed an opposition to Defendants' motion to dismiss contending that he properly asserted timely claims for discrimination under the ADA and Title VII,0 and that his claims of liability are proper because the Chapter and Defendant Lockhart are agents of the National Red Cross. Plaintiff also moved for sanctions against the Defendant for conduct he contends was designed to "exploit the original pro se status of [Plaintiff] by vexatiously misrepresenting the facts and law in the hopes of frustrating and deterring him from pursuing his valid claims[.]" (Pl.'s Oppn. at 11.)

On September 3, 2010, Defendants moved for the dismissal of Plaintiff's Amended Complaint (*See* Defendants' Motion to Dismiss or, in the Alternative, For Summary Judgment on Amended Complaint (Document No. 25)). Thereafter, on September 10, 2010, Defendants filed their Reply to Plaintiff's Response to [their first] Motion to Dismiss and Motion for Sanctions (Document No. 27).

On March 23, 2011, this Court granted Plaintiff's motion to dismiss Defendants McBain and Mid-Atlantic RC. (Order (Document No. 39.)) Additionally, in light of Plaintiff's Amended Complaint, the Court determined that Defendants' first motion to dismiss filed on August 2, 2010, was superceded by their dispositive challenge to Plaintiff's Amended Complaint on September 3,

---

[5] Plaintiff seeks an award of: (1) a permanent injunction enjoining Defendants from "retaliating, intimidating, or in any manner contacting him with regard to this lawsuit or any other matter" and ordering Defendant to establish a training program regarding discrimination and retaliation; (2) back pay, front pay, compensatory and punitive damages; (3) "out of pocket losses" incurred as a result of Defendants' conduct; (4) pre- and post-judgment interest on all damages; (5) attorneys' fees and costs, and (6) such relief deemed appropriate by the Court. (Am. Compl. at 13-14.)

2010. (*Id.*) Consequently, the Court terminated Defendants' first dispositive motion as moot. The Court further observed that Plaintiff did not file any response or opposition to Defendants' September 3, 2010 submission. Therefore, the Court indicated that it would consider Plaintiffs' previously filed opposition as a response to the instant motion. To date, Plaintiff has neither filed any opposition to Defendants' motion respecting their amended pleading, nor, asserted any objection to the Court's consideration of this response.[6]

On April 21, 2011, Plaintiff moved to withdraw his motion for Rule 11 Sanctions against Defendants. (Document No. 45.)

The Court will now turn its attention to Defendants' Motion to Dismiss or, in the Alternative, For Summary Judgment on Amended Complaint (Document No. 25).

## II. STANDARDS OF REVIEW

In the instant motion, Defendants pursue two alternative paths of relief: dismissal of Plaintiff's Complaint for its failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or summary judgment pursuant to Rule 56. A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson*

---

[6]   The Court is mindful that on August 1, 2011, Defendants filed a Motion for Summary Judgment (Document No. 61). That motion will be considered in a separate opinion.

*v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986).  Rule 12(d) of the Federal Rules of Civil Procedure provides that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed.R.Civ.P.12(d).  The Court has reviewed the record and finds that both parties have attached several exhibits to their submissions, all of which were not excluded from this Court's consideration.  Therefore, the Court will address the instant motion as one for summary judgment. Rule 12(d) further provides that "[a]ll parties must be given a reasonable opportunity to present all material that is pertinent to the motion."  (*Id*.)  The Court finds that Defendants expressly included Rule 56 as a possible option for their motion and each party has already been afforded an opportunity to "present all materials pertinent to the motion."

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 322-23.  A "material fact" is a fact that might affect the outcome of a party's case.  *See Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).  A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.  (*Id*.)  Rule 56 of the Federal Rules of Civil Procedure requires that,

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers or other materials; or

> (B) showing that the materials cited do not establish the
> absence or presence of a genuine dispute, or that an adverse
> party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). However, the nonmoving party, nonetheless, must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. If factual issues exist that can only be resolved by a trier of fact, because they may reasonably be resolved in favor of either party, summary judgment is inappropriate. *Anderson*, 477 U.S. at 250.

### III. DISCUSSION

Defendants assert three challenges to Plaintiff's Amended Complaint. First, Defendants contend that the Chapter is Plaintiff's former employer and it employed less than fifteen (15) employees at the time Plaintiff's claims arose. Therefore, it is exempt from the ADA. Second, Defendants contend that Plaintiff's claims are time barred by the statute of limitations. Third, Defendants assert that Defendant Lockhart should be dismissed from this lawsuit as there is no individual liability under the ADA. (Defs.' Mot. at 1-3; *see* Defendants' Memorandum of Law in Support of Motion to Dismiss or, in the Alternative, For Summary Judgment ("Defs.' Mem.") (Document No. 26) at 3.) The Court will first address Defendants' contention that Plaintiff's claims are untimely as that issue would potentially be wholly dispositive of this matter.

10

A. *Plaintiff's claims are timely*

In their motion and supporting memorandum, Defendants appear to suggest that Plaintiff's claims are untimely because he either filed his charge with the EEOC late or was late in asserting disability related claims in this civil action after receipt of his right to sue notice.  In their reply, Defendants withdrew their argument with respect to the latter contention.  To the extent that they maintain the former argument, the Court finds that their assertion fails.

Under both the ADA and Title VII, an employee cannot seek a remedy in a district court for an employer's alleged discriminatory conduct unless he filed a charge of discrimination with the EEOC within 180 days "after the alleged unlawful employment practice occurred."  Except in the case in which the employee "has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice[,]" the charge must be filed with the EEOC within 300 days "after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings . . . whichever is earlier[.]"  42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a); *McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 131 (4th Cir.1994) (claim is time-barred in federal court if employee does not file a timely charge with the EEOC).

The parties do not dispute that Plaintiff was terminated on January 30, 2007.  Defendants contend that "at some time after his termination," Plaintiff filed a charge of discrimination with the EEOC. Although Defendants do not squarely assert that Plaintiff filed his charge with the EEOC outside the 180-day time period, Defendants state that Plaintiff's EEOC charge of discrimination "is [time] stamped as received on September 21, 2009 by the EEOC Pittsburgh Area Office, well over two years after [Plaintiff] was terminated." Defs.'Mem. at 2 (citing Defs.' Ex.1, Charge of

11

Discrimination (Document No. 25-1)).  Defendants' suggestion that Plaintiff's claim seems untimely

has some support in the record.  Attached to Defendants' motion is the August 21, 2009 letter to

Plaintiff from the EEOC Pittsburgh Area Office.  In this letter, the EEOC indicates that Plaintiff

made a recent inquiry with the EEOC alleging an employment discrimination claim pursuant to the

ADA. (Defs.' Ex.4 at 2.)  The EEOC informed Plaintiff that a Charge of Discrimination form was

attached which contained a summary of his claims. (*Id*.)  The EEOC directed Plaintiff to review,

sign and return the Charge. (*Id*.)  Importantly, the EEOC stated "[n]o charge has been filed because

the correspondence you submitted was not signed." (Defs.' Ex.4 at 2.)  Plaintiff alleges that he filed

his claim with the EEOC in 2007.[7] (Am. Compl. ¶ 38.)  Further, in contending that Defendants had

notice of his disability related claims, Plaintiff attaches to his opposition a Notice of Charge of

Discrimination, dated October 29, 2007, which was purportedly provided to Defendants by the

EEOC. (Pl.'s Ex. C (Document No. 24-3)).  Giving the reasonable inference to Plaintiff, as the non-

moving party, this document provides some support that he filed his charge of discrimination in

2007.  While it does not demonstrate that Plaintiff filed an EEOC charge within the required time

period,  Defendants have not presented any evidence to support their suggestion that the charge was

filed after the statutory required time periods of any alleged unlawful employment practice or

asserted any argument that Plaintiff's attempt to file a charge with the EEOC was defective in any

---

[7]  The Court, on September 21, 2011, requested the parties to provide documentation, if any, demonstrating when Plaintiff first filed a charge of discrimination.  In response, Plaintiff submitted his Equal Employment Opportunity Commission Intake Questionnaire dated September 16, 2007. (*See* Plaintiff's Submission of Additional Documents Requested by the Court, and Brief Explanation Related Thereto (Document No. 83), Ex. A).  Although, the Court informed the parties that it did not desire additional "briefing" on the statute of limitations issue, Plaintiff asserted that the Supreme Court "has determined that the submission of the provided intake questionnaire is sufficient to commence proceedings with the EEOC for purposes of the statute of limitations." (Document No. 83) (citing *Fed. Express Corp. v. Holowecki*, 552 U.S. 389 (2008)).  The Court will strike Plaintiff's "brief explanation" as it was unsolicited.  Moreover, Defendants did not have the opportunity to respond to the issue, given the Court's direction.  The Court observes that the intake questionnaire does not indicate when Plaintiff submitted the questionnaire to the EEOC, only when he completed it.

manner.  Therefore, genuine issues of material fact exist, and Defendants are not entitled to summary judgment on the basis that Plaintiff failed to timely exhaust his administrative remedies.

### B.  There is no individual liability under the ADA

Defendants next argue that Defendant Lockhart should be dismissed from this lawsuit because there is no individual liability under the ADA.  Plaintiff does not squarely address this contention in his opposition.  Instead, he asserts that Defendants collectively are liable for Plaintiff's claims under an agency theory of liability.  (Pl.'s Oppn at 6; *see also* Am. Compl. ¶ 5-6) (Defendant Lockhart is an agent of Defendant National Red Cross and is a covered entity, employer and/or agent under the provisions of the ADA and the Civil Rights Act.)  Plaintiff contends that the definition of an "employer" as set forth by the ADA includes "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person[.]" 42 U.S.C. § 12111(5)(A).  Plaintiff's allegations, in their current form, include assertions that Defendant Lockhart acted in violation of the ADA in his prohibited medical examination and inquiry, hostile work environment and unlawful retaliation claims  (*See* Am. Compl. ¶ 63-78.)

The ADA has set forth that the remedies under Title VII are the remedies permitted to aggrieved parties alleging ADA violations.  *See* 42 U.S.C. § 12117(a) (stating that "[t]he powers, remedies, and procedures set forth in sections . . . 2000e-5 . . . shall be the powers, remedies and procedures" provided to "any person alleging discrimination on the basis of disability[.]") However, the ADA and Title VII statutes do not provide for causes of action against a defendant in his individual capacity.  The Fourth Circuit Court of Appeals in *Baird ex rel. Baird v. Rose,* 192 F.3d 462, 472 (4th Cir.1999*)*, concluded that Congress limited the remedies available in ADA retaliatory conduct cases to those remedies available under Title VII, which does not allow any remedy against

13

individual defendants. *See Jones v. Sternheimer*, 387 F. App'x. 366, 368 (4th Cir. 2010) ("Title VII, the ADA, and the ADEA . . . do not provide for causes of action against defendants in their individual capacities.") (unpublished per curiam decision) (citations omitted); *Lissau v. Southern Food Service, Inc*., 159 F.3d 177 (4th Cir. 1998) (supervisory employee is not an "employer" subject to Title VII liability.)  Because there is no individual liability for employees, Defendants' motion for summary judgment, as to this issue, is granted.

> C.  *Genuine disputes of material fact exist regarding Defendants' National Red Cross and the Chapter's relationship*

Defendants argue that Plaintiff's Amended Complaint should be dismissed because the Chapter is not an "employer" under the ADA and the National Red Cross did not employ Plaintiff. Defendants contend that the Chapter employs less that 15 employees[8] and is a "separate employer from the American National Red Cross or other Red Cross units."  (Def.'s Mem. at 3.)  In support of this proposition, Defendants rely on *Webb v. Am. Red Cross*, 652 F.Supp. 917 (D. Neb. 1986).[9] In *Webb*, the plaintiff alleged a Title VII sex discrimination claim against the American National Red Cross and the Lancaster County, Nebraska, Chapter of the American Red Cross, for rejecting her application for a deputy director position. Upon consideration of the defendants separate motions for summary judgment, the Nebraska Court employed a four-factor analysis set forth by the Eighth Circuit Court of Appeals in *Baker v. Stuart Broadcasting Co.*, to determine whether the National Red Cross and the Lancaster County Chapter were sufficiently "integrated to warrant unitary

---

[8]   Defendants cite the EEOC's Dismissal and Notice of Rights as support for its assertion that the Chapter employs less than 15 employees.  (*See* Defs.' Ex. 3, 4.)  In the Dismissal notice, the EEOC listed this reason as justification for closing Plaintiff's file.  (*Id.*)

[9]   Likewise, in their Reply, Defendants also rely on *Owens v. American Red Cross*, 673 F.Supp.1156 (D. Conn. 1987) (concluding that Chapter and American National Red Cross were separate employers.)

treatment." *Webb*, 652 F.Supp. 917, 919 (citing *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 392 (8th Cir. 1977.)   In determining that the National Red Cross and the County Chapter were two distinct entities, the Court considered the: (1) interrelation of operations (*e.g.*, autonomy of promulgation and operation of personnel policies, the act of chartering, distinctive by-laws); (2) common management (*e.g.*, control of chapter management and interlocking officers and directors); (3) centralized control of labor relations (*e.g.*, actual and active control of day-to-day labor practices, controlling or having the authority to control the hiring, firing, wages, hours, working conditions or fringe benefits of chapter employees) and (4) common ownership or financial control (*e.g.*, empowered to unilaterally alter or eliminate the Chapter's funding.). (*Id*. at 919-22.)

In opposition, Plaintiff asserts that he has not alleged claims against the Chapter and the National Red Cross on the basis of the "single employer" theory as suggested by Defendants, but rather under the agency theory of liability.  For that reason, he contends that *Webb* is distinguishable because the Nebraska court specifically stated that the plaintiff, in that case, did not assert an agency liability theory.  Consequently, Plaintiff contends that the term "employer" under the ADA includes "any agent of such person."  Plaintiff argues that the ADA definition is consistent with the long-established rule that if an agent commits a tort, the principal is liable, as well as, the agent. (Pl.'s Oppn at 6.)  Plaintiff also argues that proof of an express contract is not essential in determining an agency relation.  Instead, the relationship may be inferred from facts and circumstances.  To that end, Plaintiff asserts that (1) the "business name" of the two entities creates an inference that the Chapter is an agent of the National Red Cross, (2) the Chapter "possess actual authority to operate as a representative of the [National Red Cross] in business and contractual relations with third persons" and (3) outside of the authority to conduct business and contracts on behalf of the National

15

Red Cross, the Chapter possesses minimal autonomy and independence from the National Red Cross. (Pl.'s Oppn at 7.)  Plaintiff argues that his employment contract demonstrates the Chapter's actual authority to operate as a representative of the [National Red Cross] in business and contractual relations with third persons.  (Pl.'s Ex. E (Document No. 24-5.))  Plaintiff also asserts that the National Red Cross exercises nearly complete control over the conduct and activities of the Chapter.  Plaintiff explains that the Chapter exists solely as a "Chartered Unit" pursuant to the National Red Cross's By-laws. Moreover, Plaintiff asserts that the determination of the agency relationship between the two entitles can be found in Section 8.1 of the National Red Cross's Bylaws.[10]  Plaintiff cites several provisions of the bylaws which "establish the comprehensive control" exercised by the National Red Cross over the Chapter. (Pl.'s Oppn at 8.) (referring to the authority to determine and establish the terms of the Chapter's governing documents, the issuance and control of the content of the Chapter's charter, complete governance of the Chapter, absolute control over the finances of the Chapter, and contractual obligation to indemnify the Chapter and its agents.)

Defendants, in their reply, assert that Plaintiff "misapprehends the concept of 'agency' under the ADA."  (Defendant's Reply to Plaintiff's Response to Motion to Dismiss and Motion for Sanctions ("Defs.' Reply") (Document No. 27) at 4.) Defendants maintain their assertions that there is no individual liability under the ADA, that *Webb* is on point, and that the Court should find that the National Red Cross and the Chapter are separate employers. Defendants direct the Court to review payroll checks which are  from the Chapter to Lockhart, not from National Red Cross, as

---

[10]   Section 8.1 of the National Red Cross Bylaw states: "Chartered Units are local units of the [National Red Cross] and shall not be constituted as legal entities separate from the [National Red Cross]."  (Pl.'s Ex. G (Document No. 24-7.)

well as the Chapter's quarterly federal tax return with a federal employer identification number which is purportedly different from that of the National Red Cross. Defendants also argue that the EEOC has concluded that the National Red Cross and the Chapter were separate entities. Defendants did not challenge Plaintiff's specific assertions of the National Red Cross's bylaws.

The issue before the Court is whether the National Red Cross is a proper defendant in this case. It is unlawful, pursuant to the ADA, for an "employer" to discriminate on the basis of disability. 42 U.S.C. § 12117(a). As previously discussed, the ADA and Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person[.]" 42 U.S.C. § 12111(5)(A); ); 42 U.S.C. § 2000e(b). Notwithstanding Defendants contention otherwise, the Court of Appeals for the Fourth Circuit has stated, "Under the ADA and similar statutes, liability may be imposed for a principal for the statutory violations of its agent." *Rosen v. Montgomery County Maryland*, 121 F.3d 154, 157 n.3 (4th Cir. 1997) (citations omitted). The Fourth Circuit has also considered the "integrated employer doctrine" (also referred to as the single employer doctrine) in the context of civil rights cases. *Hukill v. Auto Care, Inc*., 192 F.3d 437, 442 (4th Cir. 1999); *Johnson v. Flowers Indus. Inc*., 814 F.2d 978 (4th Cir. 1987). In *Johnson*, the Fourth Circuit reviewed this issue, of whether a business had the requisite number of employees to be governed by Title VII. In its discussion of the instances in which the courts will "peer behind the corporate veil" of a corporation, the Circuit Court instructed that "[a] parent company is the employer of a subsidiary's personnel only if it controls the subsidiary's employment decisions or so completely dominates the subsidiary that the two corporations are the same entity." *Johnson*, 814 F.2d at 980. The predominate consideration in determining an employment relationship, or whether two entities should be treated as one, centers

17

on the degree of control one organization has over the other.  In assessing this degree of control, the Fourth Circuit discussed the use of a four-factor test that emphasizes: (1) the interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control.  *Johnson*, 814 F.2d at 981, n.*.(citations omitted).  However, the Fourth Circuit has characterized this test as "mechanical" and declined to adopt it. (*Id*.)  The Circuit Court explained that this "mechanical test" is not needed in every case.  The factors simply "point to the ultimate inquiry of parent domination . . .[and] express relevant evidentiary inquiries whose importance will vary with the individual case." (*Id*.)  Moreover, the Fourth Circuit later stated that the "integrated employer" test instructs a court to the determination of which entity made the final employment decision with respect to the aggrieved party.  (*See Hukill*, 192 F.3d at 444. )

The Court finds, on the facts currently before it, that irrespective of the theory employed, a genuine dispute of material fact exists which precludes summary judgment. While the Defendants urge the Court to use *Webb* to find that the Chapter and the National Red Cross are two separate entities, the Court finds that the *Webb* decision is largely fact determinative.  Plaintiff has presented, without any challenge from Defendants, the National Red Cross's Bylaws which include, among other things, provisions declaring that  charter units "shall not be constituted as legal entities separate from the Corporation"and "[a]ll funds and property received by . . . any Chartered Unit . . . are the property of the Corporation[]" (Pl.'s Ex. G.)  The record also contains evidence that the Chapter disburses payroll checks and files a separate tax return from the National Red Cross. However, there is no dispositive evidence to support a finding that the National Red Cross does not have control over the Chapter.  For instance, the record lacks evidence of the interrelation of operations, centralized control of labor relations, and consideration of any financial control by the

National Red Cross.  Affording all permissible inferences to the non-moving party, the Court finds that summary judgment is not warranted, with respect to the parties' submissions on this issue. Additionally, Plaintiff has presented this Court with an exhibit he asserts demonstrates the Chapter's authority in business and contract relations.  This document is a Job Description detailing the duties and goals for the position of "Manager of Service Delivery" at the "American Red Cross /Greenbrier Valley Chapter, located at Rt. 2, Box 153A, with the mailing address of P.O. Box 189, Lewisburg, WV 24901."  (*Id*. at 1.)  The job description, dated July 6, 2006, was approved by Chapter Chairman, James A. Hunter, Sr., and Walter M. Lockhart, Executive Director.  (*Id*. at 5.)  Plaintiff does not cite to any provision of the job description which expressly asserts that the Chapter "possesses actual authority to operate as a representative of the [National Red Cross] in business and contractual relations with third persons."  Indeed, this Court has not found any such express provision.  The Court notes that under the "Program Development" section, the following provision is found:

> Responsible for the development, promotion, and negotiation of contracts with companies, organizations, community groups for training programs and product sales to meet or exceed quarterly and annual revenue goals.

(*Id*. at 4.)  This provision does not shed any light on the Chapter's ability to obligate the National Red Cross in business and contractual relations.  Likewise, the Court finds it equally unavailing that a mere business name can suggest an agency relationship.  As to these assertions, Plaintiff has not demonstrated that these factors establish an agency relationship in this case.

19

## IV.  MOTION TO WITHDRAW

Finally, the Court has considered Plaintiff's Motion for Sanctions and his Motion to Withdraw Request for Sanctions. Upon consideration of the same, the Court orders that Plaintiff's motion be granted.

## V.  CONCLUSION

For the foregoing reasons, the Court does hereby **ORDER** that *Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment on Amended Complaint* (Document No. 25) be **GRANTED IN PART AND DENIED IN PART**.  The Court further **ORDERS** that summary judgment be **GRANTED** in favor of Defendant Lockhart, as there is no individual liability under the ADA.  Additionally, the Court **ORDERS** that the *Motion of Plaintiff Benjamin Reynolds to Withdraw Request for Sanctions against the Defendants* (Document No. 45) be **GRANTED**.  The Court **DIRECTS** the Clerk to **TERMINATE AS WITHDRAWN** *Plaintiff's Motion for Rule 11 Sanctions Against the Defendants* (Document No. 24).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        September 26, 2011

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

20